**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1651**

In re: CAPITOL BROADCASTING COMPANY, INCORPORATED, d/b/a
WRAL-TV; THE NEWS AND OBSERVER PUBLISHING COMPANY, d/b/a
The News & Observer; WSOC TELEVISION LLC; THE CHARLOTTE
OBSERVER PUBLISHING COMPANY, d/b/a The Charlotte Observer; WTVD
TELEVISION, LLC; WUNC LLC; THE ASSOCIATED PRESS; THE
WASHINGTON POST,

Appellants.

**No. 20-1652**

In re: CAPITOL BROADCASTING COMPANY, INCORPORATED, d/b/a WRAL-TV;
THE NEWS AND OBSERVER PUBLISHING COMPANY, d/b/a The News & Observer;
WSOC TELEVISION LLC; THE CHARLOTTE OBSERVER PUBLISHING
COMPANY, d/b/a The Charlotte Observer; WTVD TELEVISION, LLC; WUNC LLC;
THE ASSOCIATED PRESS; THE WASHINGTON POST,

Appellants.

Appeal from the United States District Court for the Eastern District of North Carolina, at
Raleigh. Terrence W. Boyle, District Judge. (5:19-mj-01036-BO-1)

Argued: October 27, 2021                              Decided: November 24, 2021

Before KING, AGEE and THACKER, Circuit Judges.

Dismissed by published opinion. Judge Agee wrote the opinion, in which Judge King and
Judge Thacker joined.

**ARGUED:** Michael J. Tadych, Hugh Stevens, STEVENS MARTIN VAUGHN & TADYCH, PLLC, Raleigh, North Carolina, for Appellants. Christopher Michael Anderson, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Wade M. Smith, THARRINGTON SMITH LLP, Raleigh, North Carolina; C. Amanda Martin, STEVENS MARTIN VAUGHN & TADYCH, PLLC, Raleigh, North Carolina, for Appellants. Robert J. Higdon, Jr., United States Attorney, G. Norman Acker, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

AGEE, Circuit Judge:

The Capitol Broadcasting Company and seven other media entities (collectively "the Media Entities") appeal from the district court's denial of their motion to intervene and in support of unsealing and vacating non-disclosure orders entered in two cases that were pending before that court. After briefing in the appeal concluded, the district court unsealed both cases and lifted the non-disclosure orders. We requested supplemental briefing on whether these changed circumstances rendered the appeals moot. Having considered the parties' arguments, we hold that the district court's recent orders in the underlying proceedings have rendered the Media Entities' appeal moot. Accordingly, we lack jurisdiction and therefore dismiss the appeal.

I.

In 2018, the U.S. Department of Justice subpoenaed millions of voter registration records maintained by the North Carolina State Board of Elections ("the State Board"), forty-four county boards of elections ("the County Boards"), and the North Carolina Division of Motor Vehicles. The subpoenas were issued in the U.S. District Court for the Eastern District of North Carolina, referenced the U.S. Attorney's Office for that district, and indicated they were related to grand jury proceedings. The subpoenas were initially public and reported in the press, including by some of the Media Entities' news outlets. *See, e.g.*, Gary D. Robertson, "Investigators seek massive North Carolina voting records," Associated Press (Sept. 5, 2018) https://tinyurl.com/pjua9hbx (saved as ECF opinion attachment 1); Brian Murphy, "ICE demands 'exhaustive' voting records from North

3

Carolina," The News & Observer (Raleigh, N.C.) (Sept. 5, 2018), 2018 WLNR 27155072; *see also* Richard Fausset & Michael Wines, "Justice Dept. Demands Millions of North Carolina Voter Records, Confounding Elections Officials," Int'l N.Y. Times (Sept. 6, 2018), 2018 WLNR 27311309. Soon thereafter, the State Board publicly announced it would challenge the subpoenas. *E.g.*, Gary D. Robertson, "North Carolina elections board to fight federal subpoenas," Associated Press (Sept. 8, 2018) https://tinyurl.com/3a3ejrkm (saved as ECF opinion attachment 2); Brian Murphy, "Fight ICE voting records subpoenas, NC elections board says," The News & Observer (Raleigh, N.C.) (Sept. 7, 2018), 2018 WLNR 27413400.

The State Board also prepared to respond to the subpoenas, and in February 2019, it provided publicly accessible advice to the County Boards about how to preserve records that may need to be disclosed. *E.g.*, N.C. State Bd. of Elections, Numbered Memo 2019-01 Re: Response to Subpoenas Issued by the U.S. Attorney's Office for the Eastern District of North Carolina (Feb. 6, 2019), https://s3.amazonaws.com/dl.ncsbe.gov/sboe/numbermemo/2019/Numbered%20Memo%202019-01_Response%20to%20Subpoenas%20Issued%20by%20the%20U.S.%20Attorney%E2%80%99s%20Office%20for%20the%20Eastern%20District%20of%20North%20Carolina.pdf (saved as ECF opinion attachment 3); N.C. State Bd. of Elections & Ethics Enf't, Numbered Memo 2018-09 Re: Preservation of Documents from 2016 General Election and Ballot Secrecy (Sept. 7, 2018). Three months later, the General Counsel for the State Board emailed the County Boards requesting that they conduct local searches for

records responsive to the subpoenas and upload scanned copies to a secure database ("the May 2019 email").[1]

A week after the May 2019 email was sent, certain of the Media Entities submitted public records requests to the State Board seeking the records described in or submitted in response to the email. Discussions between them followed, but the Media Entities soon determined that the State Board would not voluntarily produce the requested documents.

The Media Entities then filed (and later amended) in September 2019 a verified complaint, petition for writ of mandamus, and request for mediation in North Carolina state court against the chairman of the State Board and chairman of the Wake County Board of Elections ("the state public records request"). Put briefly, they sought a court order compelling production of or access to "the information referenced in the" State Board's May 2019 email. J.A. 28. Although the state litigation named only the State Board and Wake County Board of Elections (collectively "the Election Boards"), the Media Entities sought an order that would apply to "the defendants, and all similarly situated county boards of election." J.A. 29.

The Election Boards moved to dismiss for failure to state a claim and answered, attaching in support a December 2019 non-disclosure order entered in sealed proceedings in the U.S. District Court for the Eastern District of North Carolina. The unsealed order

---

[1] Although the email did not directly reference the subpoenas, it referred to "its work to retrieve certain records preserved under Numbered Memos 2019-01 and 2018-09," discussed above, which did so. J.A. 12.

redacted the proceedings' case numbers and similarly listed the case caption only as *In re Sealed Matter*. The non-disclosure order explained, in full:

> Pursuant to the All Writs Act (28 U.S.C. § 1651(a)) and the Court's inherent authority, and for good cause shown in this on-going sealed matter, the Court hereby orders that the [sic] Damon Circosta (in his official capacity as Chair of the North Carolina State Board of Elections), Greg Flynn (in his official capacity as Chair of the Wake County Board of Elections), the North Carolina State Board of Elections, and all 44 county boards of elections in the Eastern District of North Carolina are temporarily prohibited from disclosing the records that are the subject of a recently filed public records action pending in Wake County (N.C.) Superior Court and captioned, *Capitol Broadcasting Co., Inc. v. Circosta*, No. 19-CVS-12694 (N.C. Super. Ct. Sept. 27, 2019). The non-disclosure order shall remain in effect for six months, up to and including May 27, 2020. The Court hereby directs the litigants in this on-going sealed matter to confer in advance of the May 27, 2020 deadline and to notify the Court if a continued non-disclosure order is necessary.
> Furthermore, on January 18, 2019, the Court issued an order prohibiting the boards from publicly discussing or disclosing the matters at issue in the on-going sealed matter. That order, which encompasses the documents at issue here, remains in full force and effect.
> This order shall not be sealed, and shall be served on the boards. The boards may thereafter provide a copy of this order to the plaintiffs and the court in *Capitol Broadcasting Co., Inc. v. Circosta*, No. 19-CVS-12694 (N.C. Super. Ct. Sept. 27, 2019).

J.A. 79–80.

Because the district court proceedings in which the December 2019 non-disclosure order was entered were sealed, the Media Entities could not discover additional information about them on the court's electronic docketing system. After coordinating with the Clerk's Office for the Eastern District about how to file a motion in proceedings with unknown case numbers and names, the Media Entities first successfully moved for leave to move to intervene to challenge both the sealing order and December 2019 non-disclosure order. The district court's order granting that motion required that the Media Entities file their motion

for leave to intervene under seal. The Media Entities then filed a sealed "Motion to Intervene and in Support of Unsealing Records and Vacating Gag Order," asking for permission to intervene "for the limited purpose of asserting and protecting their and the people's presumptive right of access to judicial documents and proceedings, as conferred by the First Amendment to the Constitution of the United States; Article I, §§ 14, 18 and 24 of the North Carolina Constitution; and common law." J.A. 127. They argued that sealing the district court proceedings and filing "a seemingly indefinite gag order" served no compelling interest that would overcome their established rights to access both matters related to the district court cases and to gain access to the documents identified in their state public records request. J.A. 127–28. For these reasons, the Media Entities asked the district court (1) "to permit their intervention," (2) "to unseal the records in these cases and to order that all future filings in these cases will be made public[]" unless a specific need for sealing had been shown, (3) to conduct "all future hearings or proceedings in these matters" in open court, and (4) to "vacate the gag order" impeding their state public records request. J.A. 129, 145.

After the Government responded *ex parte*, the district court denied the Media Entities' motion to intervene. Its unsealed order explained, in full:

> Under the circumstances presented here, the [Media Entities] ha[ve] no First Amendment or common-law right of access to these proceedings and, therefore, no standing or other valid legal basis upon which to intervene in this matter. Even if [they] did, the [Media Entities] ha[ve] failed to demonstrate that the sealing of these proceedings and the filings in them is improper or should be lifted at this time. To the contrary, the Court finds that continued sealing is in accordance with applicable Federal Rules and Supreme Court precedent.

7

J.A. 124.

The Media Entities noted an appeal, and we have jurisdiction over the challenged order under 28 U.S.C. § 1291. *See N.C. State Conf. of NAACP v. Berger*, 999 F.3d 915, 923 (4th Cir. 2021) (en banc) ("For purposes of [§ 1291's] final-judgment rule, a district court's denial of a motion to intervene is treated as a final judgment that is appealable." (internal quotation marks and citation omitted)); *United States v. Moussaoui*, 483 F.3d 220, 226–33 (4th Cir. 2007).[2]

After appellate briefing concluded, in March 2021, the district court entered several orders in the underlying cases ("the March 2021 orders"). As a result of those orders, it became apparent that the cases were corollary proceedings to the grand jury investigation in which North Carolina moved to quash the Government's subpoenas for state and county election records. Specifically, the grand jury investigation had ended, leading the Government to successfully move in the corollary proceedings to unseal the dockets and

---

[2] The Government has moved to dismiss, arguing that the Media Entities did not file a timely notice of appeal under Federal Rule of Appellate Procedure 4 because they were subject to subsection (b)'s shorter deadline for a defendant's notice of appeal in a criminal proceeding rather than subsection (a)'s longer deadline for appeals in a civil case. We note that the Media Entities are not a "defendant," creating a question as to whether Rule 4(b)'s fourteen-day deadline would apply to them. *See United States v. Aldawsari*, 683 F.3d 660, 663–64 (5th Cir. 2012) (holding that a would-be intervenor's appeal from the denial of a request to intervene in an underlying criminal case is not subject to Rule 4(b)'s fourteen-day deadline). We need not decide this question, however, because we conclude we lack jurisdiction over the appeal for the reasons set forth in this opinion. By separate order, the Clerk will deny the Government's motion to dismiss for failure to file a timely notice of appeal.

filings, save for a limited number of filings that were unsealed only in redacted form.[3] In addition, the district court's order stated that "[a]ll records currently being preserved by the [State Board], the 44 county boards of elections in the Eastern District of North Carolina, and the North Carolina Division of Motor Vehicles pursuant to the August 31, 2018 grand jury subpoenas shall be released from those subpoenas." Supp. J.A. 2–3. In addition to issuing the unsealing orders, the district court separately granted the Government's motion to lift the December 2019 non-disclosure order. Supp. J.A. 1 ("For good cause shown on motion of the United States of America, it is hereby ORDERED that the non-disclosure order originally entered on December 12, 2019 is lifted.").

After the district court's orders were entered, we directed the parties to file supplemental briefs addressing what, if anything, remained a live controversy in this appeal. Having considered the record, as well as the parties' written and oral arguments, we hold that the appeal is moot. As such, we lack jurisdiction to otherwise consider the

---

[3] The district court issued three orders specifically addressing unsealing ("the unsealing orders"). The first granted the Government's motion, but provided time to identify filings that would be redacted rather than unsealed entirely. The Government did so and after reviewing the redaction requests, the district court found "them proper and consistent with orders issued in these cases," and ordered the Government to file redacted versions of those documents. Supp. J.A. 4. Thereafter, the court again stated that it ordered:

> 1. The docket and all filings in this case (including the transcript of the January 18, 2019 hearing, and all *ex parte* filings from the United States) shall be unsealed, except for the unredacted versions of the documents identified in the Court's March 25, 2021 order, which shall remain sealed.

> 2. All other materials that would disclose a matter occurring before the grand jury shall remain sealed.

Supp. J.A. 6–7.

matter and dismiss the appeal. *See CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 474 (4th Cir. 2015) ("Litigation may become moot during the pendency of an appeal when an intervening event makes it impossible for the court to grant effective relief[.]").

## II.

The U.S. Constitution limits the power of federal courts to adjudicating "Cases" and "Controversies." U.S. Const. art. III, § 2. One aspect of this limitation requires that the Court assure itself "that a live dispute exists between the parties" before it passes on the substantive issues before it. *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the [case]," *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), courts must dismiss the case as moot when the parties no longer have "a legally cognizable interest in [its] outcome," *Norfolk S. Ry.*, 608 F.3d at 161.

Here, the Media Entities sought to intervene in the district court for two particular purposes: (1) to unseal the existing district court docket and filings as well as any future proceedings, and (2) to vacate the non-disclosure order blocking their state public records requests. The district court's March 2021 orders accomplished both purposes. The district court's docket and filings were unsealed within days of its unsealing orders. Since that time, the Media Entities—and the public at large—have known the nature of the case and had access to the docket entries. Because the grand jury investigation has ended and the district court's order released all of the Election Boards' records subject to the subpoenas,

10

there's no viable concern about future hearings or filings in the underlying proceedings that might be sealed.

The Media Entities challenge this conclusion by pointing to catch-all language in the unsealing orders that they contend could be applied to prohibit access to the records they seek in the state public records request. Specifically, they refer to the language in the district court's March 2021 orders that "[a]ll other materials that would disclose a matter occurring before the grand jury shall remain sealed." Supp. J.A. 7. But it would be contradictory for this general language to be used to defeat or nullify the more specific language contained elsewhere in the district court's order. As quoted previously, that language expressly provided for complete unsealing of "the docket and filings" (save for limited redactions) as well as the specific release of the Election Boards' records that were subject to the subpoenas that were at the heart of the corollary proceedings to the grand jury investigation.

We also note that the "disclose a matter occurring before the grand jury" language tracks Federal Rule of Criminal Procedure 6(e), which prohibits certain individuals from disclosing "a matter occurring before the grand jury," R. 6(e)(2)(B); permits closure of hearings "to the extent necessary to prevent disclosure of a matter occurring before a grand jury," R. 6(e)(5); and requires "[r]ecords, orders, and subpoenas relating to grand-jury proceedings [to] be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury," R. 6(e)(6). We thus agree with the Government that the "disclose a matter occurring before the grand jury" language in the district court's March 2021 orders effectuates Rule 6(e)'s general principles

11

of secrecy regarding grand jury proceedings, i.e., ensuring that hearing transcripts would remain secret. It does not apply to the subpoenaed records held by the Election Boards, which are now released from the subpoena and non-disclosure orders. But even if this were open to dispute, we hold the Government to its representation during oral argument that the original sealing order entered in the district court proceedings in January 2019 is "not in effect" and thus does not bar the State Board from disclosing the public records that had previously been subject to any sealing order in the district court proceedings. Oral Argument at 22:50–24:13, *In re: Capitol Broadcasting Co.* (4th Cir. Oct. 27, 2021) (No. 20-1651), https://www.ca4.uscourts.gov/OAarchive/mp3/20-1651-20211027.mp3.[4] The

---

[4] At argument, the Government initially indicated it would oppose disclosure of certain personal identifying information contained in the public records. Later, however, the Government withdrew that statement and unequivocally represented that nothing in the March 2021 orders prohibited disclosure of the public records in full and that it would not move in the district court for an order redacting any additional information from any of the unsealed public records as "materials that would disclose a matter occurring before the grand jury." Supp J.A. 7; Oral Argument at 44:40–45:15, *In re: Capitol Broadcasting Co.* (4th Cir. Oct. 27, 2021) (No. 20-1651), https://www.ca4.uscourts.gov/OAarchive/mp3/20-1651-20211027.mp3 ("Let me take out the qualification. . . . The United States is not going to make that motion [for any further redactions of the public records that are part of the district court proceedings]."). We take the Government at its word that it will not oppose disclosure of any of the subject public records based on an argument that their disclosure would be inconsistent with the district court's March 2021 orders.

We give no opinion on the eventual disclosures of the state public records as that will be determined by the state court as part of the state public records request. There may be bases in state law to protect personal identifying information or other information in the public records. But that is for the state court to decide. All we hold the Government to is its position that the March 2021 orders do not bar disclosure of the public records to the Media Entities.

unsealing orders thus indisputably accomplished what the Media Entities sought by intervening to challenge the sealing of these cases in district court.

The Media Entities' second purpose for intervening—to vacate the non-disclosure order impeding their state public records request—has also already been achieved. One of the district court's March 2021 orders expressly lifted the December 2019 non-disclosure order, which had been entered in direct response to the state public records request. At oral argument, the Media Entities questioned whether the district court's March 2021 order also applied to the January 2019 oral non-disclosure order cross-referenced in the December 2019 non-disclosure order. In response to the Court's questioning, the Government represented unequivocally that it understood the district court's March 2021 orders to have lifted *both* non-disclosure orders. Oral Argument at 43:17–43:55, *In re: Capitol Broadcasting Co.* (4th Cir. Oct. 27, 2021) (No. 20-1651), https://www.ca4.uscourts.gov/OAarchive/mp3/20-1651-20211027.mp3 (Counsel: "The Government's position is that the non-disclosure order has been lifted in its entirety. . . ." Judge King: "Let me say—non-disclosure orders, plural. If there are any other including oral orders. That is, any non-disclosure orders, any and all, they've been lifted, right?" Counsel: "Yes.").

Taking the Government's representation alongside the text of all of the March 2021 orders, we agree with this understanding. The district court's March 2021 orders not only expressly lifted the December 2019 non-disclosure order, but also released the State Board from the subpoenas and unsealed the dockets and filings in the district court proceedings. There is no plausible reading of these orders that would give reason to believe that these

13

rulings did not simultaneously release the State Board from the earlier oral non-disclosure order. Because no district court order prohibits the State Board from complying with the state public records request, the effect of the district court's March 2021 orders also achieved in full the Media Entities' second purpose in seeking to intervene.

Despite having achieved both the objectives it sought by intervening, the Media Entities nonetheless assert that the appeal is not moot because their case falls within the exception for issues "capable of repetition, yet evading review." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546 (1976). This exception to mootness applies when an order is "by nature short-lived," *id.* at 547, and it "can reasonably be assumed that" the petitioners will be subjected to another similar order in the future, *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 603 (1982). The Media Entities' argument in this case is without merit.

At a minimum, this case fails to satisfy the exception because it does not present a "reasonable expectation that [the Media Entities] will be subjected to the same action again." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018). That is certainly true in considering whether the Media Entities would face similar obstacles in these specific proceedings. As noted, the grand jury investigation has ended and North Carolina's motions to quash the subpoenas have been finally resolved. Now that the district court's docket and filings have been unsealed, the nature of these proceedings are known. Given that these proceedings have ended, there's no reason to believe that a new sealing order will be issued in this case. Similarly, there's no reasonable likelihood that new non-disclosure orders would be issued to prohibit witnesses in the grand jury investigation—

14

such as the Election Boards—from discussing the district court proceedings or complying with the state public records request.[5]

The Media Entities also have not demonstrated a reasonable likelihood that they will be subjected to similar orders in other cases in the future. For example, there's been no suggestion that holistic sealing orders and temporary witness non-disclosure orders are common in the Eastern District of North Carolina. Nor have the Media Entities provided any foundation to their unfocused speculation that they are likely to be subjected to future orders of this kind. Moreover, given the traditionally recognized "veil of secrecy" afforded to grand jury investigations and the considerable discretion district courts wield in handling such matters, any concerns about sealing, non-disclosure orders, and intervention are best handled according to the specific circumstances of each case rather than in the form of generalized, and prohibited, advisory opinions. *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979); *see also* Fed. R. Crim. P. 6.

The circumstances presented here are readily distinguishable from courtroom closure cases where the Supreme Court has held that the order under review satisfied the "capable of repetition, yet evading review" exception to the mootness doctrine. For example, in *Globe Newspaper*, the Supreme Court concluded a would-be media intervenor

---

[5] As another basis for arguing that a live controversy still exists, the Media Entities note that they have not yet received any public records responsive to their state public records request. But now that the non-disclosure orders have been lifted, no order of the district court prohibits the Election Boards from producing records. Nor can any argument be made that the district court should have entered an order compelling production. Any remaining dispute about disclosures between the Media Entities and the Election Boards is a matter of state law within the purview of the state court to resolve.

had shown a reasonable likelihood that it would "someday be subjected to another order" barring it from access to a specific criminal proceeding because the order had been issued in reliance on a state statute mandating closure of certain criminal proceedings. 457 U.S. at 602–03. Similarly, in *Gannett Co. v. DePasquale*, 443 U.S. 368 (1979), the Supreme Court held that the press had shown a reasonable expectation of being "subjected to similar closure orders" in the future because the state appellate court had approved of the order closing certain pre-trial proceedings over a constitutional objection, thus increasing the likelihood that other state courts would impose similar closure orders, *id.* at 377–78. In contrast, this case presents an appeal from an order denying *intervention* to challenge orders issued in collateral proceedings to a grand jury investigation, where there's no constitutional expectation of public proceedings and no indicia of likelihood of recurrence. For all these reasons, we conclude this case does not fall within the "capable of repetition, yet evading review" exception to mootness.

Our conclusion that this case is moot and does not fall within this exception is bolstered further by the Media Entities' remaining arguments for a contrary result, which reflect that they essentially seek an advisory opinion as opposed to meaningful relief in the present appeal. For example, the Media Entities ask the Court to provide "guidance" on a series of broadly framed questions concerning when and to what extent district court proceedings can be sealed and whether and under what circumstances district courts can issue "summary" non-disclosure orders and denials of motions to intervene. Supp. Opening Br. 9–10. Similarly, as the Media Entities framed their interest during oral argument, they want the Court to "use [its] supervisory powers" to "establish a clear process" for district

16

courts to follow in the future "to not have this happen again." Oral Argument at 10:05–12:07, *In re: Capitol Broadcasting Co.* (4th Cir. Oct. 27, 2021) (No. 20-1651), https://www.ca4.uscourts.gov/OAarchive/mp3/20-1651-20211027.mp3. Such broad "guidance" is precisely the sort of "advisory opinion[] on abstract propositions of law" that the Court lacks jurisdiction to provide. *Clayland Farm Enters., LLC v. Talbot Cnty, Md.*, 987 F.3d 346, 357–58 (4th Cir. 2021). When a case no longer raises a "present, live controversy," it is moot. *Id.* at 357. The Media Entities' pleas to the Court's supervisory authority and request for templates for district courts to follow in the future without a concrete, ongoing injury to be rectified in the present case merely reinforce the mootness of the present dispute. *See Norfolk S. Ry.*, 608 F.3d at 161 ("[A]lthough the parties may desire that we render an opinion to satisfy their demand for vindication or curiosity about who's in the right and who's in the wrong, we may only decide cases that matter in the real world." (internal quotation marks and citation omitted)).

At bottom, the Media Entities sought to intervene to challenge orders that are no longer in effect. Because the Media Entities have already received that which they sought from the district court by moving to intervene, "our resolution of" whether the court erred in denying that motion "could not possibly have any practical effect on the outcome of the matter." *Id.* To the extent our consideration of that issue would require indirect review of the propriety of sealing the district court proceedings and issuing the non-disclosure orders, those orders are no longer in effect as a result of the March 2021 orders, meaning that they do not present a live controversy either. As such, the appeal falls squarely within our understanding of when an appeal is moot.

17

III.

For the reasons stated, we dismiss the appeal as moot.[6]

*DISMISSED*

---

[6] Two ancillary matters remain apart from our determination that the Media Entities' appeal is moot.

Given the originally sealed proceedings in district court, many of the Government's filings and a handful of other materials in this appeal were originally filed under seal. After the district court's March 2021 orders, the Government moved to unseal the appellate docket filings, but asked for time to review and request redactions of some documents. We granted the motion to unseal, but directed the parties "stat[e] their position on the continued sealing and redaction of the *ex parte* filings," which they have now done. We have reviewed the submissions and proposed redactions, and approve the Government's proposed redactions in United States' Motion to Unseal, *In re: Capitol Broadcasting Co.* (No. 20-1651), ECF No. 66 (Apr. 13, 2021), as amended by its reply, United States' Reply In Support of Its Proposed Redactions, *In re: Capitol Broadcasting Co.* (No. 20-1651), ECF No. 79 (June 4, 2021).

Further, after the case was scheduled for oral argument, North Carolina filed a renewed motion for leave to file a brief as *amicus curiae*. As is now public, North Carolina was a party in the underlying district court proceedings and had previously moved under seal to file an *ex parte* sealed brief as *amicus curiae*. We denied that motion, just as we now deny North Carolina's renewed motion in a separate order.

The Clerk will enter an appropriate order resolving these matters.